UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA MARAVILLAS,<br>Plaintiff,<br>v.<br>REALPAGE, INC., et al.,<br>Defendants. | No. 2:26-cv-01729-DJC-AC<br><br>ORDER |

Defendant RealPage Inc. and its subsidiaries provide property management services for landlords, including an online rent collection platform. But tenants using the platform pay a price. When Plaintiff Elisa Maravillas went to pay her rent using an online platform managed by Defendants, she had a surprise "Convenience Fee" added to her rent payment made via Automated Clearing House transfer. Plaintiff alleges this fee violates federal and state laws that protect consumers against deceptive and unfair business practices. Concluding that Plaintiff has stated a claim under the Consumers Legal Remedies Act, Unfair Competition Law, and unjust enrichment, the Court denies Defendants' pending Motion to Dismiss in part but grants the Motion with respect to Plaintiff's inadequately pled claims for Fair Debt Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, and tortious interference with contract.

## BACKGROUND

Plaintiff Elisa Maravillas is a citizen and resident of Sacramento, California. (FAC (ECF No. 16) ¶ 13.) Defendant RealPage Inc. is a Texas corporation and the parent entity of Defendants Propertyware LLC, RealPage Payment Processing Services, Inc., and RealPage Payment Services LLC. (*Id.* ¶¶ 15–18.)

Defendant RealPage provides property management services to landlords and property managers, including an online rent collection platform called Propertyware. (*Id.* ¶ 16.) Plaintiff contends that the "existence of RealPage is a surprise to consumers" who are not aware that "they will need to make their lease payments" through the online platform. (*Id.* ¶¶ 2, 5, 31.) According to the Complaint, RealPage systemically "fails to put to put processes in place at the time of leasing that would require landlords who use its service to procure authorization from consumers to use RealPage or to pay extra fees or rent to RealPage." (*Id.* ¶ 37.)

Tenants paying rent online through RealPage face an added "Convenience Fee" beyond the price of their monthly rent obligation. (*Id.* ¶¶ 2, 11, 38.) Plaintiff refers to this charge as a "pay-to-pay" fee wherein tenants are charged fees for "making a payment online or by phone." (*Id.* ¶¶ 1, 11, 38, 47.) However, tenants are not informed of these fees when applying for apartments or signing their leases. (*See id.* ¶¶ 32–33.) Plaintiff claims that the Convenience Fees are "materially higher than any payment-processing costs incurred by RealPage, can add up to hundreds of dollars over the life of a lease agreement, and provide millions of dollars in profits for RealPage." (*Id.* ¶ 84.)

Plaintiff has paid her rent through RealPage's online portal on multiple occasions. (*Id.* ¶ 87.) On July 3, 2025, "Plaintiff paid her monthly rent and was charged a Convenience Fee from RealPage totaling $0.67" that "was automatically added to her payment." (*Id.* ¶ 88.) Plaintiff encountered this fee when paying her rent via direct bank-to-bank transfer through the Automated Clearing House (ACH) network, as the fee was automatically added to any type of online payment through

RealPage. (*See id.* ¶¶ 76–77; Opp'n at 3.) Plaintiff alleges that she was "not informed of the fee until she first paid it" and not advised on how to avoid it. (FAC ¶¶ 90–91.)

Based on these allegations, Plaintiff brought this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), on June 30, 2026, asserting claims against Defendants for (1) violations of the California Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750–1784, (2) violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200–17210, (3) violations of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act), Cal. Civ. Code §§ 1788–88.3, (4) violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p, (5) tortious interference with contract, and (6) unjust enrichment. (*Id.* ¶¶ 125–210.)[1] Plaintiff brings claims one through three on behalf of a proposed California Class, claim four on behalf of the Nationwide Class, and claims five through six on behalf of a proposed Nationwide Class, or alternatively, the California Class. (*Id.* ¶¶ 75–76.) Plaintiff seeks damages, injunctive relief, and other equitable remedies.

On August 6, 2026, Defendants brought the pending Motion to Dismiss. (*See generally* MTD (ECF No. 19).) This Motion is fully briefed and was submitted without oral argument pursuant to Local Rule 230(g). (Opp'n (ECF No. 26); Reply (ECF No. 27); *see also* ECF No. 32.)

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual

[1] The Court has renumbered these claims to reflect the dismissal of Plaintiff Shelia Dean's individual claims against Defendants. (*See* ECF No. 23.)

allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Conclusory allegations are not to be considered in the plausibility analysis. *Id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In reviewing the plausibility of a complaint, courts "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts must consider the complaint "in its entirety" and may also consider "documents incorporated into the complaint by reference[ ] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Finally, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## DISCUSSION

Defendants seek dismissal of Plaintiff's claims on several bases: (1) the fraud-based allegations are insufficiently pled under Rule 9(b); (2) Plaintiff fails to state a claim under FDCPA, the Rosenthal Act, CLRA, and UCL; and (3) the tortious interference with contract and unjust enrichment claims are not cognizable. (MTD at 24.) Defendants also seek judicial notice of several screenshots of webpages, business records, and a transcript of a recent hearing in the Central District of California.

### I. Judicial Notice

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion" unless one of the exceptions applies—materials are submitted as part of the complaint, the complaint necessarily relies on certain documents whose authenticity is not questioned, or the documents are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

Defendants ask the Court to judicially notice screenshots of webpages similar to those encountered by Plaintiff, Defendant RealPage Payment Services LLC's money transmitter licenses, and the transcript of the recent motion to dismiss hearing in *Mosley v. Yardi Systems, LLC*, No. 26-cv-03318 (C.D. Cal. Sep. 11, 2026).

First, Defendants request judicial notice of screenshots of certain webpages that are "similar" to those that Plaintiff encountered when she navigated the payment portal. (Def. RJN (ECF No. 19-7) at 2; Def. Reply RJN (ECF No. 27-1) at 1–5.) Defendants claim that Plaintiff incorporated these webpages by reference in her Complaint. (Def. RJN at 3–4.) Plaintiff contests the relevance and authenticity, because the screenshots show test transactions and "similar" screens, rather than the exact screens that Plaintiff saw. (*See* Pl. RJN Opp'n. (ECF No. 26-1) at 4–6.) Incorporation by reference is designed to prevent "artful pleading by plaintiffs" and is permitted only in "rare instances" where a document is referenced in a complaint and accepted by all parties as authentic. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Because the doctrine does not cover documents "similar" to those referenced in a complaint and Plaintiff contests the authenticity of the documents, the webpages Defendants seek to introduce do not meet the standard required for the Court to take judicial notice through incorporation by reference. *See, e.g.*, *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 43 (S.D.N.Y. 2025) (declining to take judicial notice of screenshots from a webpage where the plaintiff disputed the webpage's authenticity and where the court could not "conclude . . . that the [webpage] appeared at the time of [the plaintiff's] use of the Website").

Next, Defendants request judicial notice of Defendant RealPage Payment Service LLC's money transmitter licenses. (Def. RJN at 4.) Because Plaintiff does not object, and these are business records whose accuracy cannot be reasonably questioned, the Court grants the request for judicial notice as to these licenses.

Lastly, the Court grants Defendants' request to judicially notice the transcript of the motion to dismiss hearing in *Mosley v. Yardi Systems, LLC*, No. 26-cv-03318 (C.D. Cal. Sep. 11, 2026). (Supp. Def. RJN (ECF No. 27-2) at 4–5.) Federal courts may take judicial notice of orders and proceedings in other courts, including transcripts. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *Engine Mfrs. Ass'n v. South Coast Quality Maint. Dist.*, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (taking judicial notice of *inter alia* a transcript of an oral argument before the California Supreme Court). However, "[f]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003). Therefore, in this grant of judicial notice, the Court does not presume the truth of any factual assertions made during the proceeding in *Mosley v. Yardi Systems*.

**II. Sufficiency of Fraud-Based Pleadings**

Plaintiff asserts Defendants violated the UCL and the CLRA by charging a Convenience Fee that serves "no legitimate purpose except profit," misrepresenting the fee as lawful, and failing to disclose the existence of the fee and how to avoid it. (FAC ¶¶ 166–72, 181–83.) "Courts often analyze these statutes together because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) (collecting cases). Two attributes are relevant here.

First, the fraud-based claims brought by Plaintiff require her to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To adequately plead an affirmative misrepresentation, the plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted). For a fraudulent omission claim, the Rule 9(b) standard is "somewhat relaxed" because "a plaintiff cannot plead

either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." *Acedo v. DMAX, Ltd.*, No. 2:15-cv-02443-MMM-AS, 2015 WL 12912365, at *9 (C.D. Cal. July 31, 2015) (citations omitted). The rule serves to ensure allegations of fraud be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations omitted).

Second, claims under both statutes are "governed by the 'reasonable consumer' test" that requires a plaintiff to show that "members of the public are likely to be deceived" by a defendant's activity. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Courts will rarely grant a motion to dismiss for failure to satisfy this test in the initial pleadings because what a reasonable person would believe is generally a question of fact, and at this stage, the court's focus is on the plausibility of the legal theories." *Rice v. Kimberly-Clark Corp.*, No. 2:21-cv-01519-DAD-KJN, 2022 WL 16804522, at *4 (E.D. Cal. Nov. 8, 2022) (citations omitted).

Plaintiff alleges two theories of fraud under the CLRA and UCL: (1) affirmative misrepresentations and (2) fraudulent omissions. (FAC ¶¶ 172, 181–83.) The Court considers each in turn and subsequently addresses the applicability of the statutory provisions of the CLRA and UCL.

**A. Fraudulent Affirmative Misrepresentation**

"The UCL and CLRA prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Defendants argue that Plaintiff does not identify a misrepresentation with (1) particularity that (2) would mislead and/or deceive a reasonable consumer. (Reply at 4; *see also* MTD at 11, 13.)

First, Plaintiff sufficiently alleges the "who, what, when, where, and how" of the misrepresentation with particularity under Rule 9(b). The "who" are Defendants. (FAC ¶ 105.) The "what" is the additional "undisclosed" charge to consumers who are

paying their rent online. (*Id.* ¶ 106.) The "when" is each occasion on which tenants paid their rent online and were charged the added fee, including July 3, 2025, when Plaintiff was charged a $0.67 Convenience Fee. (*Id.* ¶¶ 88, 107–08.) The "where" is the payment screen of RealPage's online portal, where the Convenience Fee is first added to rent payments. (*Id.* ¶¶ 107–08.) The "how" is that "Defendants hid, obfuscated or otherwise concealed from consumers the imposition of the Convenience Fee by failing to adequately disclose it or how to avoid it" and misled consumers about the purpose of the fee. (*Id.* ¶ 109.)

To satisfy Rule 9(b), Plaintiff's allegations of fraud need only be specific enough to give "notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1170 (E.D. Cal. 2013) ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to . . . enable [an adverse] party to prepare a responsive pleading . . . . Rule 9(b) requires no more."). Plaintiff's allegations in this suit are specific: the alleged misconduct is the addition of the "Convenience Fee" added by Defendants during the online rent payment process without a clear explanation about its optional nature or the purpose of the fee. (*See* FAC ¶ 110.) These allegations are "sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiff's] theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989–90 (9th Cir. 2008). Therefore, Plaintiff has pled the affirmative misrepresentation theory with particularity.

Second, the Court finds that Plaintiff has plausibly alleged that a reasonable consumer could be deceived by the Convenience Fee. As alleged, Defendants do not disclose the fee at any point until a tenant goes to pay their rent, with no indication that it is optional. (FAC ¶¶ 106, 109, 127.) A reasonable tenant could therefore believe that the fee is a mandatory cost of paying rent.

This conclusion is consistent with *Watson v. Crumbl*, in which this Court held that an added fee was likely to deceive the public because consumers had no notice of the fee "before they arrived at the checkout screen." 736 F. Supp. 3d 827, 842, 844 (E.D. Cal. 2024). Defendants contend that their fee "was disclosed throughout each page of the payment process" in "marked contrast" to the fee assessed in *Crumbl*. (MTD at 12.) But *Crumbl* turned on whether consumers had notice of the fee before the point of payment, not whether the fee appeared once payment was underway. 736 F. Supp. 3d at 842. Even if the fee was disclosed at each stage of the payment process, consumers still "could not reasonably be expected to anticipate the inclusion of a fee" prior to checkout. *Id.*; *see also Harris v. LoveShackFancy, LLC*, No. 25-cv-05828-KPF, 2026 WL 2085573, at *7–8 (S.D.N.Y. July 20, 2026) (holding that even if a fee appeared across three separate checkout pages, a reasonable consumer could still be misled because the fee did not appear "while the customer [was] shopping," only "after the customer . . . proceeded to checkout").[2]

The timing of the disclosure is relevant because, as alleged, the tenant who encounters the fee at the point of payment is effectively a "captive consumer." (FAC ¶ 46; Opp'n at 4.) By then, the tenant has already decided on their method of payment without knowledge of the fee and has organized their finances accordingly. If, at that point, the tenant decides to pay by mail or check because of the surprise Convenience Fee, they could risk late payment and additional charges. Under these circumstances, it is plausible that many tenants will continue with their online payment, despite the Convenience Fee. The court in *Chowning v. Tyler Techs., Inc.* recognized this dynamic, explaining that the disclosure of an online "reservation fee"

[2] The pleadings suggest that Defendants had the opportunity to alert consumers of the added fee. According to Defendants' Motion to Compel Arbitration, Defendants included a mandatory arbitration agreement when tenants were using their services to sign up for an account with Defendants. (Mot. to Compel Arbitration (ECF No. 20-1) at 1.) But there are no allegations that Defendants also included a notice about charging a Convenience Fee. This differs from the allegations in *Yardi v. Mosley Systems, LLC*, where the court noted that renters using the online payment platform "agree[] to the fees before they use the portal." Transcript of Proceedings at 6:2–3, *Mosley v. Yardi Systems, LLC*, No. 26-cv-03318 (C.D. Cal. Sep. 11, 2026).

upon checkout meant a reasonable consumer could be deceived into paying it, even if they would have elected to pay in person with no fee if they had received prior notice. No. 4:25-cv-04009-YGR, 2025 WL 3496690, at *3 (N.D. Cal. Dec. 5, 2025). Further, the *de minimis* fee charged to Plaintiff of $0.67 makes the fee more likely to mislead a reasonable consumer, because "a reasonable consumer would [be unlikely to] notice the addition of the fee and be compelled to investigate further." *Crumbl*, 736 F. Supp. 3d at 843.

Defendants contend that a reasonable consumer would understand that the Convenience Fee is optional, because "paying rent through a third-party online portal is a context in which reasonable consumers routinely encounter and expect processing fees" and Plaintiff "was appraised at the outset that she could pay rent via mail or in person." (MTD at 12.) As discussed above, this argument ignores the position that the online payment portal finds many tenants in at the point the Convenience Fee is applied. Indeed, the "convenience fees may have been optional, but it charged those fees to consumers who had no option but to do business with it." *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1283 (11th Cir. 2025) (holding that a "pay-to-pay" convenience fee violates the FDCPA).

Accordingly, the Court finds that Plaintiff has satisfied the heightened pleading standard and the reasonable consumer test and permits the affirmative misrepresentation theory of fraud to proceed.

**B. Fraudulent Omission**

Omissions are actionable under the CLRA and UCL "only when the omission is contrary to a representation actually made by the defendant or where a duty to disclose exists." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (citing *Keegan v. Am. Honda Motor Co.*, 838 F.Supp.2d 929, 939–40 (C.D.Cal.2012)). Plaintiff proceeds on both theories. She alleges both (1) an omission contrary to a representation actually made by Defendants, known as a partial representation theory, and (2) a duty to disclose based on active concealment.

(Opp'n at 7–8; FAC ¶¶ 74–78, 84, 106, 176.) The theories rely on the layout of RealPage's online portal, which "automatically add[s] fees, never says that the fees are not required or authorized by the lease, never says that the fees can be avoided or how they can be avoided, and lies about the purpose and nature of the fee," including "never saying the fee is largely comprised of profit for Defendants." (Opp'n at 7–8; *see also* FAC ¶¶ 74–78, 84, 106, 176.) Defendants respond that they do not have a duty to disclose the Convenience Fee, and even if they do, they disclose the fee. (MTD at 10.) The Court addresses each of the Plaintiff's theories in turn.

**1. Partial Representation**

A partial representation theory requires an omission that is "contrary to a representation actually made by the defendant." *Reilly v. Davids Nat. Toothpaste, Inc.*, 827 F. Supp. 3d 1326, 1342 n.11 (C.D. Cal. 2026) (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084-85 & n.7 (N.D. Cal. 2022)). Such a claim arises when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead[.]" *Warner Constr. Corp. v. City of L.A.*, 2 Cal.3d 285, 294 (Cal. 1970). Therefore, the Court looks to (1) whether Defendants made a representation and (2) whether Defendants omitted a fact that a reasonable consumer would find to be material and rendered the representation misleading. *See Harvey v. World Mkt., LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *5 (N.D. Cal. May 9, 2025). Plaintiff's allegations satisfy both requirements.

First, Defendants made a representation. When a tenant paid rent online, Defendants presented the Convenience Fee as part of the amount due, added automatically to the payment. (FAC ¶ 88.) Second, Defendants failed to disclose a material fact that rendered the representation likely to mislead. Plaintiff alleges that Defendants did not disclose that the fee was optional or how it could be avoided, even though a fee-free method of paying was available. (*Id.* ¶¶ 90–91.) Plaintiff further alleges that she "relied on RealPage's misrepresentations and omissions about

the fee in making her rent payments," (*Id.* ¶ 92), and if the Convenience Fee was clearly optional or disclosed in a timely manner, the "vast majority of consumers would not pay" the fee. (*Id.* ¶¶ 77–78, 106.) Based on similar allegations, the district court in *Chowning* determined that a "reservation fee" added at the checkout screen by a third-party platform was a material representation, because the plaintiffs alleged that they may have elected to use another payment method had they had known the true nature of the fee. 2025 WL 3496690, at *3. Those allegations sufficed to plead that a reasonable consumer would be misled by the addition of a fee added at checkout for online reservations. *Id.*

Therefore, the Court finds that Plaintiff has plausibly alleged that Defendants made a material partial representation about the Convenience Fee that could mislead a reasonable consumer. Accordingly, at this stage of the proceedings, the Court permits the partial misrepresentation theory of fraudulent omission to proceed.

**2. Active Concealment**

Absent a partial representation, an omission is actionable only if a duty to disclose exists. Under California law, "an obligation to disclose may arise . . . when the defendant actively conceals a material fact from the plaintiff." *Smith v. Ford Motor Co.*, 749 F.Supp.2d 980, 987 (N.D.Cal.2010) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997)). Active concealment requires Plaintiff to allege "specific affirmative acts on the part of the defendants in hiding, concealing or covering up" the alleged misconduct. *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (Cal. Ct. App. 1963). Generalized allegations or allegations of mere nondisclosure do not satisfy this standard. *See Herron*, 924 F. Supp. 2d 1161 at 1176. In other words, silence alone, however misleading, is not active concealment.

Here, Plaintiff's allegations mainly rest on what Defendants failed to disclose, including the existence of the fee, how to avoid the fee, and the profit derived from the fee. (FAC ¶ 106; Opp'n at 7–8.) There are no allegations regarding any affirmative act Defendants took to hide the fee or the availability of a fee-free alternative.

Therefore, the claim that a duty to disclose exists based on active concealment of material facts is deficient.

**III. The CLRA Claims**

The purpose of the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. The CLRA is "liberally construed and applied to promote its underlying purposes." *Id.* Unlawful practices under the CLRA include "unfair methods of competition and unfair or deceptive acts or practices . . . intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770. Plaintiff alleges that Defendants' conduct violates five provisions of the CLRA: two that proscribe deceptive advertising, Cal. Civ. Code § 1770(a)(20), (29), and others that proscribe misrepresentations about goods or services, § 1770(a)(3), (5), (14). For the reasons discussed below, the Court declines to dismiss Plaintiff's CLRA claims.

**A. Goods or Services Under the CLRA**

The CLRA applies to transactions for the "sale or lease of goods or services" to consumers. Cal. Civ. Code § 1770(a). The law defines "services" to include "work, labor, and services for other than a commercial or business use," while "goods" encompass "tangible chattels." *Id.* § 1761(a)–(b).

Defendants operate an online platform that processes rent payments and charge tenants a usage fee. (FAC ¶¶ 40–43.) Processing the payment is "work" or "labor" performed for tenants, and tenants use the platform for the personal purpose of paying rent. (*Id.* ¶¶ 13, 35.) Defendants themselves characterize the fee as "a cost paid in exchange for [the] convenience" of paying rent in a "timely, secure" manner "without writing or mailing a check." (MTD at 16.) Moreover, in their Motion to Compel Arbitration (which has since become moot, see ECF No. 23, 30), Defendants describe themselves as providing "online application and payment services," further confirming that the Convenience Fee is charged in connection with a service offered

to tenants. (Mot. to Compel Arbitration at 2.) Therefore, the Court finds that the Convenience Fee is charged in exchange for a service within the meaning of the CLRA.

At least one court in this Circuit has reached the same conclusion. In *Patterson v. WEX, Inc.*, a third-party platform charged a processing fee to consumers who paid insurance premiums online. No. 25-cv-08557-RS, 2026 WL 370183, at *4 (N.D. Cal. Feb. 10, 2026). The court held that the fee plausibly constituted a sale of services to the plaintiff under the CLRA, explaining that it was "a fee for WEX's Service: WEX processes COBRA payments online and sells that service to Plaintiff and other Platform Users." *Id.* at *5. In the present case, Defendants similarly operate a platform through which consumers pay an obligation owed to someone else, and they charge consumers a usage fee. (FAC ¶¶ 40–43.)

Defendants argue that the CLRA claim fails because the law's definition of "goods or services" does not cover "purely financial transactions," and charging a convenience fee is a "purely financial transaction." (MTD at 8–9.) Because the fee is incurred "when transferring money electronically to [Plaintiff's] landlord," Defendants contend it is analogous to an ATM fee or a credit card transaction, without any "tangible good or covered service . . . received *from* Defendants." (*Id.* at 9.) The cases Defendants cite to support this proposition, however, exclusively relate to "credit services," including issuing a credit card, bank service fees, overdraft fees, ATM fees, and more. *See, e.g., Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. Ct. App. 2007) (holding the issuance of credit does not constitute a service under CLRA); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009) (overdraft fees); *Milan v. JPMorgan Chase Bank, N.A.*, 2025 WL 3295323, at *4–5 (C.D. Cal. Nov. 26, 2025) (bank service fees). Those cases are therefore inapposite because Defendants do not claim to provide credit or banking services to tenants.

Accordingly, the Court finds that Plaintiff has plausibly alleged the Convenience Fee is charged in exchange for services within the meaning of CLRA.

**B. Section 1770(a)(20)**

Section 1770(a)(20) prohibits the "[a]dvertising" of a "specific price" for a good or service if that advertised price does not include all mandatory charges. Cal. Civ. Code § 1770(a)(20). Plaintiff contends that Defendants violated section 1770(a)(20) by charging tenants a different rate than their advertised rent. (FAC ¶ 180.) Defendants argue section 1770(a)(20) is inapplicable because Plaintiff has not identified an "advertisement" that violates the provision.[3] (MTD at 10.)

The Court finds that Plaintiff's claim under section 1770(a)(20) fails. While the CLRA does not contain a global definition of "advertising," section 1770(a)(20) provides specific guidance as to what constitutes an advertisement that comes within the ambit of subsection (a)(20), explaining that advertisements include, but are not limited to, "shelf tags, displays, and media advertising." *Id.* Courts have construed this to mean "public announcements which are published or disseminated to the general public in an effort to arouse a desire to buy or patronize[.]" *Holt v. Noble House Hotels & Resort*, 370 F. Supp. 3d 1158, 1166 (S.D. Cal. 2019). In her Opposition, Plaintiff clarifies that the deceptive advertisement is the representation of the amount owed under the Convenience Fee. (Opp'n at 7 n.6.) However, a privately assessed fee within a personal account does not fall under the definition of advertisement.[4] Further, Plaintiff does not allege that her lease price was advertised to the public and "arouse[d] a desire" in her to rent the unit. *Holt*, 370 F. Supp. 3d at 1166. Therefore, Defendants' Motion to Dismiss as it pertains to section 1770(a)(20) is granted.

---

[3] Defendants also make this argument as it applies to section 1770(a)(29). However, the Court notes that Defendants treat section 1770(a)(20) and (a)(29) as if they share the same requirement for "advertisement," but they do not. Subsection (a)(20) prohibits misleading "advertisements," but (a)(29), by contrast, prohibits "[a]dvertising, displaying, or offering a price" that omits mandatory fees, so displaying or offering a price satisfies the conduct element without needing to specify an "advertisement." Therefore, the Court only addresses the "advertisement" argument as it pertains to subsection (a)(20).

[4] Given the Court finds that Plaintiff's claim does not fall under section 1770(a)(20) because the Convenience Fee is not an "advertisement," it will not address Defendants' alternative argument that subsection (a)(20) does not apply because the Convenience Fee is not an additional charge for rent. (MTD at 10.)

**C. Section 1770(a)(29)**

Plaintiff further alleges that Defendants violated section 1770(a)(29), also known as the Honest Pricing Law, which prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges," excluding taxes and certain shipping costs. Cal. Civ. Code § 1770(a)(29)(A). (FAC ¶ 180.) Plaintiff argues that "at no point during the payment process are consumers informed of alternative means to pay their rent to avoid the Convenience Fee, leading consumers to believe the fee is mandatory and unavoidable." (*Id.* ¶ 76.) Defendants respond that the fee was optional because Plaintiff "was apprised at the outset that she could pay rent via mail or in person" and "[a] reasonable consumer would not be deceived." (MTD at 12.)

The Court holds that the Honest Pricing Law applies to the Convenience Fee. First, a reasonable consumer could be deceived by Defendants' failure to disclose the fee transparently, as discussed in Section II.A *supra*. Second, Defendants do not claim that they ever "apprised" Plaintiff of the optional nature of the fee, only that the lease noted that she could pay rent by mail or in person. (*Id.* at 4.) They did not inform the Plaintiff that she could avoid a fee by paying rent by mail or in person, and they also do not claim that the fee is optional at the point the tenant is paying online.

In cases where the Honest Pricing Law claim failed, the fee itself was optional at the point of payment. For example, in *Harris*, a "Shipping Protection Fee" was imposed at the point of payment, but the consumer could opt out by unchecking the box that applied it. 2026 WL 2085573, at *12. While the court found that a reasonable consumer could perceive the fee as mandatory, this "deceptive presentation" did not "render the charge mandatory." *Id.* In contrast, the defendant in *WEX* insisted that the imposed fee was an optional processing fee for "choosing to use the [defendant's] online platform to pay for [insurance]," as the consumer had the option to avoid the fee through recurring online payments or payment by mail. 2026 WL 370183 at *1, *5. The court, however, found the CLRA applied in part because the

fee applied "no matter the payment method, and even when paying multiple monthly premiums at the same time." *Id.* at *4.

Here, according to the operative complaint, the Convenience Fee is a mandatory cost once a tenant elects to pay online. (FAC ¶¶ 40–43, 78.) Plaintiff contends there was no online payment method that she could use to avoid the fee, as the Convenience Fee was added to both credit card payments and ACH payments. (*See* Opp'n at 3.) Therefore, the Convenience Fee is a mandatory and unavoidable condition of using Defendants' service and falls within the meaning of section1770(a)(29)(A).

Defendants also argue that Defendant RealPage Payment Services LLC is exempt from section 1770(a)(29) because they are a licensed money transmitter and the "convenience-fee transactions" meet the definition of an "electronic fund transfer" under the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693. (MTD at 10, Reply at 8 n.1.) Section 1170(a)(29) exempts financial entities that are "required to provide disclosures" under the EFTA only "for purposes of that financial transaction." Cal. Civ. Code § 1770(a)(29)(C). Thus, Defendants' contention presents an affirmative defense, because it depends on facts showing RealPage Payment Services LLC is obligated to make EFTA disclosures for the convenience-fee transactions at issue.

Typically, affirmative defenses may not be raised in a motion to dismiss under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam). While an affirmative defense that "clearly appears on the face of the pleading" is grounds for dismissal, that is the case "only if the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense[.]" *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citation and internal quotation marks omitted). Here, the operative complaint does not allege that RealPage Payment Services LLC is required to provide EFTA disclosures for the convenience-fee transactions or otherwise falls within section 1770(a)(29)'s exemption. Accordingly,

the Court cannot find at this stage of the proceedings that Defendant RealPage Payment Services LLC is exempt from section 1770(a)(29).

Therefore, the Court holds that the section 1770(a)(29) claims may proceed against all Defendants.

**IV. The UCL Claims**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Pro. Code §§ 17200–17210. There are three "prongs" through which a plaintiff may assert a violation of the UCL: unlawful, unfair, and fraudulent. Although the three varieties of unfair competition are disjunctive, they are not mutually exclusive; thus, "[a]n act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). Plaintiff contends Defendants' conduct violates all three prongs of the UCL. (*See* FAC ¶ 161.)

**A. Unlawful**

Plaintiff grounds her unlawful business practice claim in the alleged Civil Code violations discussed above. The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* Because the Court finds that Plaintiff has adequately alleged a violation of the CLRA, she has also sufficiently alleged a violation under the unlawfulness prong of the UCL.

**B. Unfair**

"The unfair prong of the UCL 'creates a cause of action for a business practice that is unfair even if not proscribed by some other law.'" *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 844 (N.D. Cal. 2022) (quoting *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019)). Whether conduct is unfair can be determined in two

ways: (1) by establishing that the conduct offends "some legislatively declared policy" (the "tethering" test) or (2) by weighing the utility of the conduct against the harm to the alleged victim (the "balancing" test). *Id.* at 844–45 (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) and *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). While the California Supreme Court has rejected the balancing test in favor of the tethering test for competitor suits under the UCL, it has not clarified whether the tethering test is the sole test that should apply to consumer suits as well. *See, e.g.*, *Cel-Tech*, 20 Cal. 4th at 186–87*; see Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 304 (2020). In the absence of such guidance, the Ninth Circuit has reviewed unfairness under both the balancing and tethering tests. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020).

Plaintiff argues that their allegations have met the unfair prong under either of these tests, contending the challenged practice (1) is tethered to "at least three distinct policies detailed in the FAC," including California's Honest Pricing Law, California's Rosenthal Act, and the FDCPA, and (2) creates harm by imposing a mandatory fee on "captive consumers" when Defendants have "reasonably available alternatives to further [their] legitimate business interests." (FAC ¶¶ 46, 168). The Court finds that Plaintiff sufficiently states the tethering test and, therefore, declines to reach the balancing test.

To meet the tethering test, the alleged conduct must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186–87. This requires a "close nexus between the challenged act and the legislative policy." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018). The operative complaint alleges that the conduct is tethered to the Honest Pricing Law, the Rosenthal Act, and the FDCPA. (*See* FAC ¶¶ 50, 152; Opp'n at 10.) While the challenged conduct is inapposite to the Rosenthal Act and the FDCPA, as discussed below, Plaintiff plausibly alleges that the challenged conduct

is tethered to the legislatively declared policy of the Honest Pricing Act. Plaintiff explains that the goal of the law is to prohibit surprise mandatory fees imposed at payment because "[k]nowing the price of a good or service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive." (FAC ¶ 50.) Defendants' addition of a surprise Convenience Fee at the point of payment that inflates the expected cost of rent is in direct violation of the spirit of the law. Defendants only response is that the challenged conduct "does not violate these 'policies,'" but the Court finds that Plaintiff has plausibly alleged that it does in Section III *supra*. (Reply at 9.) Further, the challenged conduct does not need to be a direct violation of the law, as that would collapse the unlawful prong into the unfair prong. Therefore, Plaintiff has plausibly alleged the unfair prong of the UCL under the tethering test.

Given that Plaintiff has stated a cause of action under the tethering test, the Court does not reach the balancing test. Thus, the Court denies Defendants' Motion to Dismiss Plaintiff's UCL unfairness claim.

**C. Fraudulent**

Finally, Plaintiff alleges Defendants' conduct falls under the fraudulent prong of the UCL. (FAC ¶ 164.) "Conduct that is considered deceptive or misleading runs afoul of the . . . fraudulent prong of the UCL[] when it is 'likely to deceive' a 'reasonable consumer.'" *WEX*, 2026 WL 370183, at *3. For the reasons set out above in Section II.A *supra*, the Court finds that a reasonable consumer is likely to be deceived and, therefore, denies Defendants' Motion to Dismiss Plaintiff's UCL fraudulent claim.

**V. FDCPA and the Rosenthal Act**

Under the provisions of the FCDPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). The FDCPA specifically bans "[t]he collection of any amount (including any interest, fee, charge, or expense

incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. The Rosenthal Act, "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Barria v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01413-KJM-AC, 2016 WL 474319, at *4 (E.D. Cal. Feb. 8, 2016). "Indeed, the provisions of the FDCPA are incorporated into the Rosenthal Act by California Civil Code section 1788.17. Consequently, conduct by a debt collector that violates the FDCPA violates the Rosenthal Act as well." *Id.* (citing *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)).

Pay-to-pay fees imposed on existing debt have been widely found to fall under the purview of the FDCPA and its California counterpart. *See, e.g.*, *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136 (N.D. Cal. 2020); *Tuttle v. Equifax Check*, 190 F.3d 9, 11, 15 (2d Cir. 1999). The fee itself is not considered a debt because the payee is "under no obligation to pay [] fees until the moment [they choose] to make a rental payment online." *See Robledo v. Yardi Sys., Inc.*, 741 F. Supp. 3d 617, 623 (W.D. Tex. 2024) ("If charging a consumer for a one-time purchase is 'debt collection,' every purchase . . . would transform a merchant into a 'debt collector' at the point of payment. Such a result would be absurd."). Thus, the question here is whether the pay-to-pay fees are being imposed on an underlying debt obligation.

The Court finds that the FDCPA and the Rosenthal Act do not reach Defendants' practice of charging a Convenience Fee to tenants, because timely rent payments do not qualify as a debt. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and

another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e). The payment of timely rent is not considered to be a consumer debt or credit transaction, because the landlord "neither sells property on time nor makes funds available to tenants." *Ortiz v. Lyon Mgmt. Grp., Inc.*, 157 Cal. App. 4th 604, 619 (2007); *see also Phillips v. Archstone Simi Valley LLC*, cv-15-5559-DMG, 2016 WL 7444550, at *5 (C.D. Cal. Dec. 15, 2016), *aff'd*, 740 F. App'x 603 (9th Cir. 2018) (granting judgment as a matter of law on a claim under the Rosenthal Act because "residential rent collection is not a consumer credit transaction"); *Yatooma v. OP Prop. Mgmt. LP*, 2017 WL 3120259, at *3 (C.D. Cal. July 20, 2017) (dismissing claims under the FDCPA and the Rosenthal Act against a property manager because the collection of rent, even if past due, is not debt collection); *see also Whitfield v. Sandoval*, No. 1:06-cv-01047-AWI-SMS, 2007 WL 4239862, at *1 (E.D. Cal. Nov. 29, 2007) (concluding that landlords are not in the "primary business" of collecting debts).

Accordingly, the Court grants Defendants' Motion to Dismiss the FDCPA and Rosenthal Act claims.

**VI. Tortious Interference with Contract**

Defendants also seek dismissal of Plaintiff's claims for tortious interference with contract. Tortious interference with existing contracts under California law requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824-25 (9th Cir. 2023) (citations omitted). Generally, it is not necessary that the defendant's conduct is wrongful apart from the interference with the contract itself. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141, 1148 (2020). Plaintiff fails to plead sufficient facts for tortious interference with contract by

not adequately identifying a breach or disruption in Plaintiff's lease as a result of the Convenience Fee.

A lease agreement is the type of "formally cemented economic relationship" that the tortious interference with contract protects. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995). Plaintiff adequately alleges she maintains this contract, and that Defendants had knowledge of the contract. (*See* FAC (ECF No. 16-2) Ex. 1.) However, Plaintiff's allegations fall short for the remaining factors. While Plaintiff claims multiple times that her lease barred the addition of Convenience Fees, she does not point to a specific provision of the lease that unambiguously does so. (*See, e.g.*, FAC ¶ 127.) She also fails to allege an actual breach or disruption in the contractual relationship.

The case Plaintiff points to as instructive, *Walters v. Fidelity Mortgage of California*, is not analogous facts to the present case. 730 F. Supp. 2d 1185, 1211 (E.D. Cal. 2010). There, the third party's conduct prevented the plaintiff from fulfilling her obligations to her lender that ultimately led to a breach of contract and the foreclosure sale of her home. *Id.* As noted, Plaintiff does not allege any breach or disruption into contractual relations resulting from the fee imposition. Therefore, the Court grants Defendants' Motion to Dismiss the tortious interference with contract claim.

**VII. Unjust Enrichment**

Finally, Plaintiff claims that Defendants were unjustly enriched by the imposition of the Convenience Fee, while Defendants argue the benefit was not unjust because "Plaintiff immediately receive precisely what she paid for: immediate, secure, confirmed transmission of her rent without writing or mailing a check." (Reply at 15.) The Court finds that Plaintiff adequately states a claim for unjust enrichment.

While "there is not a standalone cause of action for unjust enrichment, . . . a court may 'construe the cause of action as a quasi-contract claim seeking restitution,' " which describes "the theory underlying a claim that a defendant has been unjustly

conferred a benefit 'through mistake, fraud, coercion, or request.'" *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2 (2026)); *see also ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). For example, in *WEX*, the district court denied dismissal of the plaintiff's unjust enrichment claim because the plaintiff "adequately allege[d] that WEX received and unjustly retained a benefit, the OPP Fees, at Plaintiff's expense." 2026 WL 370183, at *5. In that case, the fee was presented as a "processing fee" for online insurance payments "when it [was] instead an additional charge unrelated to Defendant's transaction costs." *Id.* at *4.

Here, Plaintiff contends that the Convenience Fees charged by Defendants "are materially higher than any payment-processing costs incurred by RealPage," and Defendants received and fraudulently retained the fees as "pure profit" at Plaintiff's expense. (*Id.* ¶¶ 84–85, 210; Opp'n at 3.) This is sufficient to support a standalone unjust enrichment claim construed as quasi-contract claim seeking restitution. Accordingly, the Defendants' Motion to Dismiss is denied as to Plaintiff's unjust enrichment claim.

////

////

////

////

////

////

////

////

////

////

////

////

## CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 19) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' Motion to Dismiss is GRANTED as to Plaintiff's First through Third Claims against Defendants without leave to amend.
2. Defendants' Motion to Dismiss is DENIED as to Plaintiff's Fourth, Fifth, and Eighth Claims against Defendants.[5]

IT IS SO ORDERED.

Dated: **November 20, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC11 – maravillas26cv01729.mtd

[5] Former Plaintiff Sheila Dean voluntarily dismissed her claims. (ECF No. 22.) Because the Sixth and Seventh Claims were only asserted by Plaintiff Dean, Defendants' Motion to Dismiss is DENIED as moot as to those claims.